UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANDRE CALIX,

                Plaintiff,

      -against-                                **MEMORANDUM AND ORDER**

*Lieutenant* THOMAS POPE,

                                              18-CV-3980 (RPK) (PK)

                Defendant.                 19-CV-6685 (RPK) (PK)

-------------------------------------------------------x

ANDRE CALIX,

                Plaintiff,

      -against-

UNITED STATES OF AMERICA,

                Defendant.

-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Andre Calix sues Lt. Thomas Pope of the Federal Bureau of Prisons ("BOP") and the United States of America for injuries he sustained when attacked by his cellmate at the Metropolitan Detention Center in Brooklyn ("MDC"). He raises an Eighth Amendment claim against Lt. Pope for failing to provide safe housing under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and a negligence claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). Defendants move for summary judgment on both claims, while plaintiff moves for summary judgment on his FTCA

1

claim. For the reasons that follow, defendants' motion is granted as to plaintiff's *Bivens* claim. Neither party is entitled to summary judgment on the FTCA claim.

## BACKGROUND

The following facts, taken from the parties' Rule 56.1 statements, depositions, and evidentiary filings, are uncontradicted by other evidence unless noted.

### A.   Factual Background

On May 22, 2018, without warning or provocation, plaintiff's cellmate, Inmate A, threw hot water on plaintiff. Consolidated R. 56.1 Statement ¶ 2, 4 (Dkt. #125-1) ("R. 56.1 Statement").[1] Inmate A had only been in the MDC for several days, and until the assault, plaintiff and Inmate A had never fought or quarreled. *Id*. at ¶¶ 4, 7–8.

Neither inmate was assigned a substantially higher security-risk score than the other. *Compare* Decl. of Matthew J. Modafferi Ex. D (Dkt. #126-1) (Inmate A: risk of violence = 20, security level = medium), *with* Matthew J. Modafferi Ex. E (Dkt. #126-2) (plaintiff: risk of violence = 22, security level = medium). At the time of the attack, though, Inmate A was under investigation for an incident at his previous place of incarceration, Federal Medical Center ("FMC") Devins. R. 56.1 Statement ¶ 17. There, on April 20, 2018, BOP staff observed Inmate A arguing with his cellmate. *Id*. at ¶ 18. After corrections officers separated the men, Inmate A's cellmate alleged that a week earlier, Inmate A had performed a sex act on the cellmate without consent while he was asleep. *Id*. at ¶ 19. Inmate A denied the allegation and claimed that he

---

[1] The filings associated with the cross-motions for summary judgment in the consolidated cases, *Calix v. Pope* and *Calix v. United States* are identical. *Compare Calix v. Pope*, No. 18-CV-3980 (RPK) (PK) (E.D.N.Y.) (Dkts. #122–26) with *Calix v. United States*, No. 19-CV-6685 (RPK) (PK) (E.D.N.Y.) (Dkts. #63–67). Unless otherwise indicated, all documents are referred to by the docket numbers assigned in *Calix v. Pope*.

Because the consolidated Rule 56.1 statement ("Rule 56.1 statement") omits paragraph numbering, the paragraph numbers stated in this order refer to the "facts" identified in the Rule 56.1 statement. Thus, "R. 56.1 Statement ¶ 1" refers to "Defendants' Undisputed Fact No. 1," "R. 56.1 Statement ¶ 2" refers to "Defendants' Undisputed Fact No. 2," and so forth.

2

fought his cellmate because his cellmate spat on him. *Id.* at ¶ 23; Decl. of Matthew J. Modafferi, Ex. L 1 (Dkt. #126-5) ("Greer-Pope Emails").

During the investigation, Inmate A and his cellmate were separated and placed in the unit in FMC Devins called "N-1," R. 56.1 Statement ¶ 13, which is a "special unit" with "more staff, psychology, and twenty-four-hour health services care." Second Decl. of Matthew J. Modafferi, Ex. A 77:16–18 (Dkt. #123-18) ("Greer Dep."). Inmates may be placed in N-1 pending an investigation or to separate them from other inmates after a fight. Decl. of Matthew J. Modafferi, Ex. B 10 ¶ 18 (Dkt. #123-19).

On May 11, while the BOP was investigating the altercation at FMC Devins, the BOP transferred Inmate A to the MDC, where he was placed in the general population. R. 56.1 Statement ¶ 21. On May 21, the day before the attack, Lt. Benjamin Greer of FMC Devins contacted Lt. Pope and asked him to interview Inmate A for the investigation. Greer-Pope Emails 2. Lt. Greer also communicated to Lt. Pope the substance of the allegations about Inmate A. *Ibid*. Lt. Pope conducted the interview and reported that Inmate A denied the sexual-assault allegations and stated that he attacked his cellmate for spitting on him. *Id.* at 1. The following day, Inmate A attacked plaintiff. R. 56.1 Statement ¶ 2.

The parties disagree over whether BOP policies permitted an inmate under investigation to be transferred from unit N-1 into general-population housing without the approval of a captain. *Compare* Decl. of Sameer Nath, Ex. 1, at 2 (Dkt. #124-4) ("If an inmate were released from N-1 to a general population unit during the pendency of a[ Special Investigative Supervisor ("SIS")] investigation, SIS and the Captain would have to sign off on a release order.") *with* Second Decl. of Mathew J. Modafferi, Ex. C, at 4, 16 (Dkt. #123-20) ("BOP SHU Policies") (outlining BOP

policies for releasing individuals from special housing units ("SHUs") and setting forth no specific sign-off requirement).

Ultimately, Lt. Greer determined that the sexual-assault allegations against Inmate A were unsubstantiated due to a lack of credible evidence. Decl. of Matthew J. Modafferi, Ex. M 4–5 (Dkt. #126-6). A captain signed off on the report on May 31, 2018, and a warden signed off on the report on June 8, 2018. *Id*. at 1.

### B. Procedural History

After the attack, plaintiff sued Lt. Pope and several other defendants. *See* Compl. (Dkt. #1). Then-presiding Judge Chen dismissed the defendants other than Lt. Pope. *See* Mem. & Order 5 (Dkt. #6); May 15, 2019 Minute Entry. Plaintiff then filed the operative amended complaint, *see* Am. Compl. (Dkt. #24), and obtained counsel, *see* Notice of Appearance (Dkt. #114). In 2019, plaintiff also filed the related suit against the United States, *see* Compl., *Calix v. United States*, No. 19-CV-6684 (RPK) (PK) (E.D.N.Y.) (Dkt. #1) ("*Calix v. United States* Compl."), which was then consolidated with the action against Lt. Pope, *see* Jan. 14, 2020 Order.

These complaints contain two claims: an Eighth Amendment deliberate-indifference claim against Lt. Pope for failing to provide safe housing under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and a negligence claim against the United States under the FTCA, 28 U.S.C. § 2671 *et seq*. *See* Am. Compl.; *Calix v. United States* Compl. Defendants move for summary judgment on both claims, and plaintiff moves for summary judgment on the FTCA claim. *See* Mot. for Summ. J. (Dkt. #122); Mem. in Supp. (Dkt. #124-1).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the

4

nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant. *Ibid*. A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

Defendants argue, in part, that this Court lacks subject-matter jurisdiction over plaintiff's negligence claim because the claim does not fall under the FTCA's waiver of sovereign immunity. Mot. for Summ. J. 19–22. When a motion for summary judgment includes a challenge to subject-matter jurisdiction, a district court "ha[s] broad discretion when determining how to consider [the] challenge[]." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (citing *Gibbs v. Buck*, 307 U.S. 66, 71–72 (1939)); *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). After discovery, if no genuine dispute of material facts exists as to jurisdiction, the matter may be

5

resolved on the affidavits. *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006). Conversely, "if a genuine dispute of material fact [does] exist[]," the court "may conduct a hearing limited to" jurisdiction or "proceed to trial and make its jurisdictional ruling at the close of the evidence." *Ibid*.

## DISCUSSION

Defendants' motion is granted in part and denied in part, and plaintiff's motion is denied in full. Plaintiff's deliberate-indifference claim fails for lack of a cause of action. However, genuine factual disputes preclude summary judgment for either side on plaintiff's FTCA claim.

### I. Plaintiff's *Bivens* Claim Fails

Plaintiff's claim for deliberate indifference falls short, because it does not fit within the narrow confines of a permissible *Bivens* claim. In *Bivens* itself, the Supreme Court recognized an implied damages action against federal narcotics officers for a Fourth Amendment violation arising from a warrantless arrest of a man in his home. *Bivens*, 403 U.S. at 389. The Court then extended *Bivens* by recognizing two more implied damages remedies: one under against members of Congress under the Fifth Amendment for sex discrimination, *Davis v. Passman*, 442 U.S. 228, 249–50 (1979), and another against prison officials under the Eighth Amendment for a denial of medical care to a prisoner resulting in death, *Carlson v. Green*, 446 U.S. 14, 16 (1980). Those decisions "were the products of an era in which the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the provision that was allegedly violated." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (citation omitted). But since then, the Supreme Court has deemed the "expansion of *Bivens*" as "a disfavored judicial activity," *id*. at 742 (internal quotation marks and citation omitted), because "[a]t bottom, creating a cause of action is a legislative endeavor." *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022).

6

The Supreme Court has instructed courts to engage in a two-step inquiry in determining whether to recognize a cause of action under *Bivens*. First, the court should "ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the Court has implied a damages action." *Id.* at 1803 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017)). Meaningful differences include

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860.

If "a claim arises in a new context," the court must ask "whether there are any special factors that counsel hesitation" about extending *Bivens* to the new claim. *Hernandez*, 140 S. Ct. at 743 (internal quotation marks and brackets omitted). "[S]eparation-of-powers principles" are "central" to that inquiry. *Ibid.* (quoting *Ziglar*, 137 S. Ct. at 1857). A court must ask "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857–58. A court may consider whether the judiciary possesses the capacity to assess the impact of liability "on governmental operations," and whether "the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Id.* at 1858. If any factor gives "reason to pause," *Bivens* may not be extended. *Hernandez*, 140 S. Ct. at 743. Indeed, if "a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action," that "uncertainty alone is a special factor that forecloses relief." *Egbert*, 142 S. Ct. at 1803. While this inquiry formally proceeds in two steps, the Supreme Court has noted that in practice, "those steps often resolve to a single question:

7

whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Ibid.*

As courts have consistently recognized, these principles bar "non-medical" *Bivens* claims under the Eighth Amendment like plaintiff's. *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018); *Cannenier v. Skipper-Scott*, No. 18-CV-2383 (LGS), 2019 WL 764795, at *5 (S.D.N.Y. Feb. 20, 2019) ("[T]here is no *Bivens* remedy for failure to protect or improper housing") (collecting cases); *White v. Hess*, No. 14-CV-3339 (CBA) (LB), 2020 WL 1536379, at *7 (E.D.N.Y. Mar. 31, 2020); *Crespo v. Hurwitz*, No. 17-CV-6329 (RRM) (PK), 2020 WL 7021658, at *5 (E.D.N.Y. Nov. 30, 2020). While the Court has previously recognized an Eighth Amendment claim relating to "failure to provide adequate medical treatment," *Ziglar*, 137 S. Ct. at 1855; *see Hernandez*, 140 S. Ct. at 741, plaintiff challenges decisions concerning prisoner housing and safety, not medical care. *See* Am. Compl. ¶¶ 1–5. And his claim implicates a distinct legal duty: not the duty to provide "adequate . . . medical care," but the duty to "take reasonable measures to guaranty the safety of . . . inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). Plaintiff's claim therefore arises in a new context. *See Hernandez*, 140 S. Ct. at 743.

At least two "reason[s]" exist "to think that Congress might be better equipped to create a damages remedy" in this context than the courts. *Egbert*, 142 S. Ct. at 1803. First, prison housing placements and inmate separations involve complicated, policy-laden tradeoffs about housing resources, as well as difficult predictions of future risk. Given the complexity of that decision-making, a court is ill-placed to "predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*" against the officials who make these decisions. *Ibid.* (citation omitted) This "uncertainty alone is a special factor that forecloses relief." *Id.* at 1804.

8

Second, Congress created an "alternative remedial structure" for federal prisoners' claims in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, which omits "a standalone damages remedy against federal jailers," *Ziglar*, 137 S. Ct. at 1865. The Supreme Court has not decided whether the PLRA forecloses all prisoner *Bivens* suits. *Ibid*. But the Court has stated that "[i]t could be argued" that the enactment of the PLRA suggests that "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Ibid*. In recent years, most courts in this circuit to confront that question have accepted that argument. *See Crespo*, 2020 WL 7021658, at *6; *Oneil v. Rodriguez*, No. 18-CV-3287 (AMD) (LB), 2020 WL 5820548, at *4 (E.D.N.Y. Sept. 30, 2020); *Herrera v. United States*, No. 20-CV-10206 (PKC), 2022 WL 902090, at *8–*9 (S.D.N.Y. Mar. 27, 2022); *Sabir v. Williams*, No. 3:20-CV-0008 (VAB), 2020 WL 3489522, at *4 (D. Conn. June 26, 2020); *but see Turkmen v. Ashcroft*, No. 02-CV-2307 (DLI) (SMG), 2021 WL 4099495, at *4 (E.D.N.Y. Sept. 9, 2021) (adopting report and recommendation finding that "congressional intent [regarding the PLRA] is 'too ambiguous to provide meaningful support for either side's position'") (citation omitted). Ultimately, the passage of the PLRA—with its limited remedies—"is enough to counsel hesitation" about the extension of *Bivens* to plaintiff's claim. *Crespo*, 2020 WL 7021658, at *6.

Plaintiff errs in contending that his *Bivens* claim may proceed because *Farmer* "clearly anticipated inmate on inmate violence in the context of *Bivens*," Pl.'s Mem. in Opp'n 10 (Dkt. #124). *Farmer* addressed the question of how "to define the term 'deliberate indifference'" under the Eighth Amendment. 511 U.S. at 829. While the dispute arose in the context of a civil suit by an inmate raising a claim relating to prisoner-on-prisoner violence, the Court did not address—but simply assumed—that a *Bivens* cause-of-action existed for such a claim. *See id.* at 830–31. Accordingly, in the years since, the Supreme Court has never construed *Farmer* to establish the

9

availability of a *Bivens* remedy for such claims. *Ziglar*, 137 S. Ct. at 1855 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *accord Hernandez*, 140 S. Ct. at 742–43; *Egbert*, 142 S. Ct. at 1802. Because plaintiff's claim would extend *Bivens*, and because there is reason to pause before doing so in the context of failure-to-protect claims, *Bivens* does not extend to plaintiff's deliberate-indifference claim.

## II. Factual Disputes Preclude Summary Judgment on the FTCA Claim

Neither side is entitled to summary judgment on plaintiff's FTCA claim. "Absent an 'unequivocally expressed' statutory waiver, the United States . . . [is] immune from suit based on the principle of sovereign immunity." *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (citation omitted). The FTCA provides a limited waiver of federal sovereign immunity, permitting a plaintiff to sue the United States to recover damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). This waiver of sovereign immunity, though, is subject to what is known as the discretionary-function exception, which states that the FTCA's waiver of sovereign immunity does not apply to "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a). It covers acts by federal employees that "involve an element of judgment or choice" and are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (citations omitted). This exception is jurisdictional; if an action falls within it, the court may not hear the case. *Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021).

Defendants seek summary judgment on plaintiff's FTCA claim on the ground that the discretionary-function exception covers housing decisions made by BOP officials. Defs.' Mem. in Supp. 19–25. Plaintiff, however, contends that the discretionary-function exception does not apply because BOP officials failed to comply with a mandatory policy preventing Inmate A from being released into the general population without a captain's approval. Pl.'s Mem. in Supp. 6–9. Because a genuine dispute of material fact exists as to whether the discretionary-function exception covers defendants' actions, summary judgment on this claim is denied to both parties.

In general, BOP's decisions regarding prisoner housing are discretionary. By statute, the BOP must "provide suitable quarters" for, "provide for the safekeeping" of, and "provide for the protection" of all federal inmates. 18 U.S.C. § 4042(a)(2)–(3). While "[t]his provision 'sets forth a mandatory duty of care[,] it does not . . . direct the manner by which the BOP must fulfill this duty." *Chen v. United States*, No. 09-CV-2306 (ARR), 2011 WL 2039433, at *7 (E.D.N.Y. May 24, 2011) (quoting *Taveras v. Hasty*, No. 02-CV-1307 (DGT), 2005 WL 1594330, at *3 (E.D.N.Y. July 7, 2005)), *aff'd*, 494 F. App'x 108 (2d Cir. 2012). Accordingly, decisions regarding prisoner housing and safety typically fall within the discretionary-function exception. *Ibid.*; *Farley v. United States*, No. 11-CV-198S, 2017 WL 3503727, at *5–*6 (W.D.N.Y. Aug. 16, 2017) (collecting cases); *Banks v. United States*, 2011 WL 4100454, at *13 (S.D.N.Y. Sept. 15, 2011) (collecting cases), *report and recommendation adopted*, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (collecting cases from different circuits); *Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008) (same).

Nevertheless, when a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the discretionary-function exception does not apply. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536

11

(1988)). Under such circumstances "the employee has no rightful option but to adhere to the directive," and failure to do so may result in liability. *Ibid.* (quoting *Berkovitz*, 486 U.S. at 536). Accordingly, the discretionary-function exception does not shield the United States from liability for the acts of employees who fail to comply with a mandatory BOP policy. *Riascos-Hurtado v. United States*, No. 09-CV-3 (RJD) (VMS), 2015 WL 3603965, at *7 (E.D.N.Y. June 5, 2015) ("To the extent BOP employees failed to adhere to their own regulations, that too is evidence that these were not discretionary acts performed by BOP employees."); *Douglas v. United States*, 814 F.3d 1268, 1277 (11th Cir. 2016) (reversing dismissal of claim alleging BOP failed to follow mandatory regulations).

Here, factual disputes preclude summary judgment to either party under the FTCA because it is unclear whether a mandatory policy barred the BOP from releasing Inmate A into the general population without the approval of a captain. Defendants point to policies suggesting that BOP officers generally have discretion when deciding whether to segregate a prisoner from other inmates. BOP SHU Policies 4, 16; *see* Decl. of Matthew J. Modafferi, Ex. K 223:5–11 (Dkt. #123-13) (stating that an inmate facing allegations of misconduct may be housed in the MDC's general population because "without an incident report," the alleged misconduct remains only "an allegation"). But plaintiff points to defendants' deposition by written questions, in which defendants themselves stated that "[i]f an inmate were released from N-1 to a general population unit during the pendency of an . . . investigation, [the investigators] and the Captain *would have to* sign off on a release order." Decl. of Sameer Nath, Ex. 1, at 2 (emphasis added). And defendants have not suggested that a captain signed off on the release of Inmate A from N-1 into the general population—where Inmate A allegedly assaulted plaintiff—while the investigation of Inmate A's conduct was ongoing. *See* R. 56.1 Statement ¶¶ 13, 15; Decl. of Matthew J. Modafferi, Ex. M 1

12

(Dkt. #126-6). While defendants now dispute whether the sign-off requirement applies to release into the general population unit of a different facility, Defs' Reply at 9 (citing Greer Dep. 211:7–212:9, 264:1–265:25), the conflicting evidence gives rise to a material dispute of fact over whether BOP policy "specifically prescribes a course of action for an employee to follow," in this area, *Gaubert*, 499 U.S. at 322. In other words, there is a dispute of fact pertaining to whether the discretionary-function exception applies. Given this dispute, neither party is entitled to summary judgment on plaintiff's FTCA claims. Instead, I will allow the case to "proceed to trial and make [a] jurisdictional ruling at the close of the evidence." *All. For Env't Renewal, Inc.*, 436 F.3d at 88.

Moreover, because the discretionary-function exception is jurisdictional, *Cangemi*, 13 F.4th at 130, I cannot address the parties' alternative arguments on the merits, *All. For Env't Renewal*, 436 F.3d at 85 ("[A] district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction . . . before deciding a case on the merits."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *id.* at 110 (O'Connor, J., concurring) ("[F]ederal courts should be certain of their jurisdiction before reaching the merits of a case."). Accordingly, defendants' motion is denied as to this claim, and plaintiff's motion is denied in full.

## CONCLUSION

Defendants' motion is granted in part and denied in part, and plaintiff's motion is denied in full. Defendants are granted summary judgment on plaintiff's *Bivens* claim, but genuine disputes of material fact preclude summary judgment for either side on the FTCA claim. Because

defendants prevail on the sole claim against Lt. Pope, Lt. Pope is dismissed from this action. The Clerk of Court is directed to amend the caption accordingly.

    SO ORDERED.

                                               /s/ Rachel Kovner  
                                               RACHEL P. KOVNER  
                                               United States District Judge

Dated:        September 28, 2022  
                Brooklyn, New York